401313.2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

VIBER MEDIA, INC.,

                    Plaintiff,

        v.

RATES TECHNOLOGY INC.,


                    Defendants.

----------------------------------------------------------------

CIVIL ACTION

No. 13-0953 (DLC)


### DEFENDANT RATES TECHNOLOGY INC.'S
### MEMORANDUM OF LAW IN SUPPORT OF MOTIONS TO
### STRIKE PURSUANT TO RULE 12(f), FED.R.CIV.P. AND
### TO DISMISS PORTIONS OF PLAINTIFF'S COMPLAINT
### PURSUANT TO RULE 12(b)(6), FED.R.CIV.P

Milton Springut
Tal S. Benschar
Springut Law PC
75 Rockefeller Plaza, 19th Floor
New York, New York 10019
Telephone: (212) 813-1600
Fax: (212) 813-9600

401313.2

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION ............................................................................................................. 1

BACKGROUND ............................................................................................................... 2

    A.    RTI And Its Patents ................................................................................ 2

    B.    RTI Is Not A "Patent Troll" ................................................................... 3

ARGUMENT ................................................................................................................... 4

    I.    Complaint Paragraph 4 Should Be Struck Under Rule 12(f) ................... 4

        A.    The Allegations Of Paragraph 4 Are Pejorative
            And Scandalous ........................................................................ 4

        B.    The Allegations Of Paragaph 4 Are False And Prejudicial
            To RTI ...................................................................................... 5

        C.    The Allegations Of Paragraph 4 Are Impertinent And
            Immaterial ............................................................................... 6

        D.    Paragraph 4 Should Be Struck ................................................. 7

    II.    Viber's Invalidity Claims Should Be Dismissed ..................................... 8

CONCLUSION ............................................................................................................... 10

## TABLE OF AUTHORITIES

### FEDERAL CASES

PAGE(S)

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)...................................................................8, 9

*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007) ....................................................8

*In re Bill of Lading Transmission and Processing System Patent Litigation*,
681 F.3d 1323 (Fed. Cir. 2012)........................................................................................9

*DNT, LLC v. Sprint Spectrum, LP*, 2010 WL 582164 (E.D.Va. 2010) ...........................5

*Highmark, Inc. v. Allcare Health Mgmt. Sys.*, 706 F.Supp.2d 713
(N.D.Tex. 2010), *vacated in part on reconsideration,*
732 F.Supp.2d 653 (N.D.Tex. 2010), *aff'd in part, reversed in part
on other grounds,* 687 F.3d 1300 (Fed.Cir. 2012) ...........................................................5

*Hynix Smiconductor v. Rambus, Inc.*, 2008 WL 350654 (N.D.Cal. 2008).......................5

*LML Holdings, Inc. v. Pacific Coast Distributing, Inc.*,
2012 WL 2994017 (N.D.Cal. 2012) .................................................................................5

*Memory Control Enterprise, LLC v. Edmunds.com, Inc.*,
2012 WL 681765 (C.D.Cal. 2012)....................................................................................9

*Overstock.com, Inc. v. Furnace Brook, LLC*,
420 F.Supp.2d 1217 (D.Utah 2005)..................................................................................6

*PageMelding, Inc. v. ESPN, Inc.*, 2012 WL 3877686 (N.D.Cal. 2012) ..........................9

*PPS Data, LLC v. Allscripts Healthcare Solutions,
LLC*, 2012 WL 243346 (M.D.Fla. 2012) ........................................................................10

*Roe v. City of New York,* 151 F.Supp.2d 495 (S.D.N.Y. 2001) ......................................7

*Senju Pharmaceutical Co., Ltd. v. Apotex, Inc.*,
--- F.Supp.2d ----, 2013 WL 444928 (D.Del. 2013) .......................................................9

*Texas Data Co., LLC v. Target Brands, Inc.*,
771 F.Supp.2d 630 (E.D.Tex. 2008).................................................................................6

**FEDERAL STATUTES & RULES**

Fed.R.Civ.P. 12(b)(6)............................................................................................1, 10

Fed.R.Civ.P. 12(f)..............................................................................................1, 4, 10

**OTHER AUTHORITIES**

5C Wright, Miller and Cooper,
*Federal Practice and Procedure* §1382 ................................................................4, 6, 7

401313.2

Defendant Rates Technology, Inc. ("RTI") moves the Court to (1) strike paragraph 4 of plaintiff Viber Media, Inc.'s ("Viber") Complaint as immaterial, impertinent and scandalous under Rule 12(f); and (2) dismiss Plaintiff's wholly conclusory allegations of invalidity under Rule 12(b)(6).

## INTRODUCTION

RTI seeks two forms of relief in this motion.  First, Viber has tainted its complaint with a gratuitous, pejorative mischaracterization – that RTI is a "patent troll."  This allegation is false, scandalous and has nothing to do with the issues before the Court. It has no place in a federal court pleading and only serves to render the conduct of the case acrimonious, unprofessional and wasteful of legal resources.

Second, the Complaint's allegations of invalidity are wholly conclusory – doing nothing more than alleging that the patents-in-suit are invalid under three cited sections of the Patent Act. Such conclusory allegations fail to meet the minimal pleading standards imposed by the Supreme Court, and courts throughout the country have dismissed similar allegations.

## BACKGROUND

### A.   RTI And Its Patents

RTI is an established and respected player in the telecommunications field.  May 6th of this year marks thirty years that RTI has conducted business.  Such business has included the design and manufacture of telecommunications and related technologies including private pay telephones, Busy Busy reiterative dialing telephones, call cost rate chips and least-cost-routing rate chips.  RTI has also supplied call cost databases, database lookup software and consulting services. Thus RTI is

anything but a "non-practicing entity."  To the contrary, RTI is actively involved in providing products and services in the telecommunications industry.  (Weinberger 1)

Nor does RTI acquire and exploit patented inventions created by others, as a number of other companies routinely do.   In the course of RTI's history, it has owned 10 U.S. patents, plus foreign counterparts, and has enforced five of these patents.  Each of these enforced patents were inventions of RTI's principals and employees.   Thus, for example, the two patents-in-suit were co-invented by RTI President Gerald Weinberger and its Vice-President of Engineering, Roger C. Lee. (*Id.* 3)

RTI has *only* enforced its own patents and has *never* filed a patent infringement lawsuit except for the purpose of enforcing its patents and only when it cannot arrive at a settlement with an accused patent infringer. RTI has found success, with more than 370 telecommunications companies having licensed the patents-in-suit. Yet over the past few years RTI has been in relatively few lawsuits which include declaratory judgment actions where RTI had no choice but to respond with compulsory patent-infringement counterclaims.  RTI has also licensed several thousand companies under three other RTI patents (now expired).  (*Id.* 4)

**B.     RTI Is Not A "Patent Troll"**

The allegation that RTI is a "patent troll" is simply false.  The definition of the term "patent troll" in a popular on-line encyclopedia is:

> A **patent troll** is an unkind phrase used to describe a company or person that owns a patent and tries to get other people to pay a lot of money for the right to use the patent. The patent troll usually asks for an amount of money that is less than defending a lawsuit. A patent troll is different from other patent owners for two reasons. First, the patent troll usually does not make or sell anything products itself. Second, a patent troll is also not usually the inventor. The patent troll instead buys the patent from other

companies, and, usually, very cheap because the other company
was going out of business.

*http://simple.wikipedia.org/wiki/Patent_troll.*  This definition is consistent with how the term is used

and understood in the industry:  that the company acquires patents from others (typically in

bankruptcy proceedings or companies in distress) and that it enforces patents that the company does

not itself practice.  Neither apply to RTI – RTI only enforces patents of its own invention, and it

provides products and services apart from licensing of its patents.  (Weinberger 5)

     RTI has been diligent in responding to accusations in the press of being a "patent troll."  For

example, in 2010 Business Week published an article about patent trolls which included mention of

RTI, although it did not directly label RTI as a "patent troll."  RTI complained, and subsequently a

correction was issued.  (*Id.*  7 and Exh. A)  Similarly, a web article entitled "The Legal

Infrastructure of Business" by Professor Randal C. Picker (a copy of which was submitted to the

Court by Viber in pre-motion letters) implies that RTI is a patent troll and quotes Patent Freedom as

classifying RTI as a "non-practicing entity."  After RTI's complaints, the author agreed to post the

article in revised form.  (*Id.*  8)

     The labeling of RTI as a "patent troll" in a public document filed with the Court is harmful

to RTI's business.  Such a public statement smears RTI's reputation, and makes it more difficult for

it to consummate business deals with customers and licensees.  Unlike a publication, a filing with

the Court can only be corrected by an order of the Court.  In fact, given the official status of a court

filing (as opposed to a mere publication), Viber's gratuitous pejorative statements are worse, since

they appear to have the approval of the Court.  (*Id.* 9)

# ARGUMENT

## I.  Complaint Paragraph 4 Should Be Struck Under Rule 12(f)

Viber's Complaint seeks a declaratory judgment that it is not infringing two of RTI's patents and that these patents are invalid.  Paragraph 4, however, contains the following pejorative allegations:

> Defendant RTI is known as a patent "troll" – a term commonly understood to include an entity that enforces its patents against many targets in an unduly aggressive or opportunistic manner, but which does not itself manufacture, market or sell any products or services, much less ones which such patents allegedly cover. Another name commonly used for such a company is a "non-practicing entity".  In keeping with the *modus operandi* of a typical troll, RTI has targeted participants in virtually all sectors of the telecommunications industry with its patents, based on a business model that entails motivating targets to pay regardless of whether they infringe simply to avoid the cost of patent litigation.

(Complaint ¶ 4).

Rule 12(f) provides that upon motion of a party, "the court may order stricken from any pleading any . . . immaterial, impertinent or scandalous material."  Fed.R.Civ.P. 12(f).  For the following reasons, paragraph 4 should be struck:

### A.  The Allegations Of Paragraph 4 Are Pejorative And Scandalous

"Scandalous" matter is "that which improperly casts a derogatory light on someone, most typically on a party to the action."  5C Wright, Miller and Cooper, *Federal Practice and Procedure*, § 1382.  "[T]he disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations."  *Id.*

Courts have recognized the pejorative nature of the term "patent troll." *Highmark, Inc. v. Allcare Health Mgmt. Sys.*, 706 F.Supp.2d 713, 727 n. 5 (N.D.Tex. 2010), *vacated in part on reconsideration,* 732 F.Supp.2d 653 (N.D.Tex. 2010), *aff'd in part, reversed in part on other grounds,* 687 F.3d 1300 (Fed.Cir. 2012).  In at least two reported cases, federal courts have barred use of that term at a jury trial as prejudicial.  *DNT, LLC v. Sprint Spectrum, LP*, 2010 WL 582164, *4 (E.D.Va. 2010) (patent troll example of a derogatory term barred at trial); *Hynix Smiconductor v. Rambus, Inc.*, 2008 WL 350654, *3 (N.D.Cal. 2008) (same).  In pre-motion correspondence with the Court, Viber submitted a definition of the term "patent troll" from Wikipedia which begins "Patent troll is a pejorative term . . ."  (Viber Ltr. 02/27/13 Exh. A)  Indeed, in open court, Viber's counsel admitted twice that the term is pejorative.  Given the admission by Viber that the term is indeed pejorative, these allegations clearly qualify as scandalous.

### B.       The Allegations Of Paragaph 4 Are False And Prejudicial To RTI

The term "patent troll" is not only derogatory, but as applied to RTI it is false and prejudicial.   It is acknowledged that RTI's president, Mr. Weinberger, is an inventor of the patents-in-suit.   (Weinberger 3)  That alone takes it out of the definition of "patent troll."  *See LML Holdings, Inc. v. Pacific Coast Distributing, Inc.*, 2012 WL 2994017, * n. 2 (N.D.Cal. 2012) (Noting that the "classic definition" of a patent troll "does not envision an entity which the patent inventors themselves wholly own.").

As detailed above and in the declaration of Mr. Weinberger, RTI is an established player in the telecommunications and electronics field.  It only enforces patents of its own invention,

and sells products and services apart from licensing of its patents.  Under the accepted definition of the term, it is simply not a "patent troll."  (Weinberger 2-4)

The labeling of RTI as a "patent troll" in a public document filed with the Court is harmful to RTI's business.  Such a public statement smears RTI's reputation, and makes it more difficult for it to consummate business deals with customers and licensees.  (Weinberger 9)

### C.       The Allegations Of Paragraph 4 Are Impertinent And Immaterial

"Immaterial" matter is "that which has no essential or important relationship to the claim for relief or the defenses being pleaded.'  5C Wright, Miller and Cooper, *Federal Practice and Procedure*, § 1382.  Similarly, "impertinent" matter consists of "statements that do not pertain, and are not necessary, to the issues in question."  *Id.*

Viber's claims for relief relate to patent infringement and validity. Neither of these grounds for relief, however, depend upon whether the patent owner is a so-called "patent troll." *See Texas Data Co., LLC v. Target Brands, Inc.,* 771 F.Supp.2d 630, 638 (E.D.Tex. 2008) (Court "not aware of any rules that apply differently to" patent trolls.); *Overstock.com, Inc. v. Furnace Brook, LLC*, 420 F.Supp.2d 1217, 1223 (D.Utah 2005) (rejecting argument that jurisdictional law applies differently to patent trolls).

Viber's self-styled "theory of the case" is that "RTI's behavior toward Viber has been entirely consistent with that of an overaggressive, fee-seeking patent troll."  (Viber Ltr. 02/27/13 at 2)  But this "theory" simply is not pertinent to the issues properly before the Court – infringement and validity.  Even if these allegations were true – and as shown above, they most certainly are not – they do nothing to advance the Court's resolution of the case.  Even "real" patent trolls can own valid patents which are infringed.

Furthermore, leaving this allegation in the case threatens to embroil the parties and the Court in wasteful side issues and lowers the dignity of the Court.  As discussed, RTI's reputation is important to it, and by making such allegations, Viber is putting RTI in the position of either wasting the Court's time (and its own legal resources) responding to such allegations in detail, or allowing its reputation to be besmirched by false, derogatory charges.  For example, in response to RTI's premotion letter, Viber submitted a letter with voluminous attachments, which RTI then had to explain in its own responding letter to the Court.  (*See* Viber Ltr. 2/27/13 and RTI Ltr. 02/28/13)  Such exchanges lower the dignity and professionalism of the Court, and serve no purpose other than to drive up legal fees.  Striking the allegations, on the other hand, would focus the Court and the parties on the issues legitimately presented by the Complaint – infringement and validity.

### D.      Paragraph 4 Should Be Struck

In order to succeed on a motion to strike, a movant must show that "(1) no evidence in support of the allegations would be admissible; (2) the allegations have no bearing on the relevant issues; and (3) permitting the allegations to stand would result in prejudice to the movant."  *Roe v. City of New York,* 151 F.Supp.2d 495, 510 (S.D.N.Y. 2001); *see also* 5C Wright, Miller and Cooper, *Federal Practice and Procedure*, § 1382 ("One test that has been advanced for determining whether an allegation in a pleading is immaterial and impertinent within the meaning of Rule 12(f) is whether proof concerning it could be received at trial; if it could not, then the matter is immaterial and impertinent.")

RTI has shown all three elements.  As noted, courts have barred *even mention* of the term patent troll at trial; clearly, evidence would not be admitted in support of such allegations.  They

have no bearing on the issues of validity and infringement.  And, the presence in the public record of such allegations are prejudicial to RTI for the reasons set forth above.  For these reasons, Complaint paragraph 4 should be struck.

## II.      Viber's Invalidity Claims Should Be Dismissed

Viber's complaint seeks a declaratory judgment of invalidity and non-infringement as to two RTI patents.  The invalidity allegations are terse and conclusory – all that is alleged is that two identified RTI patents "and each of its claims, is invalid for failure to comply with one or more of the requirements of 35 U.S.C. §§ 102, 103 and 112."   (Complaint ¶¶ 18, 24)  Such conclusory allegations are insufficient and should be dismissed.

In recent years, the Supreme Court has required more than conclusory allegations to survive a motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 (2007).

> Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is *678 entitled to relief." As the Court held in *Twombly,* 550 U.S. 544, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.*, at 555. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557.
>
> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Ibid*. Where a

8

>complaint pleads facts that are "merely consistent with" a
>defendant's liability, it "stops short of the line between possibility
>and plausibility of 'entitlement to relief.'" *Id.,* at 557.

*Iqbal*, 556 U.S. at 677-78.

In *In re Bill of Lading Transmission and Processing System Patent Litigation*, 681 F.3d 1323 (Fed. Cir. 2012), the Federal Circuit held that as to allegations of direct patent infringement, a complaint which satisfies the form patent-infringement complaint in the Appendix to the Federal Rules (Form 18) is sufficient to withstand a motion to dismiss. *Id.*, 681 F.3d at 1334-35. However, as to other allegations in a patent case for which there is no model form – such as allegations of indirect infringement – then the *Iqbal/Twombly* standard applies. *Id.* at 1336-37 ("We agree with several district courts that have addressed this issue that Form 18 should be strictly construed as measuring only the sufficiency of allegations of direct infringement, and not indirect infringement.")

Since neither Form 18 nor any other form in the Appendix concern claims of patent invalidity, it follows that the *Iqbal/Twombly* standard applies to such allegations. *See Senju Pharmaceutical Co., Ltd. v. Apotex, Inc.*, --- F.Supp.2d ----, 2013 WL 444928, *4 (D.Del. 2013). Indeed, several courts have dismissed allegations indistinguishable from Viber's as too conclusory and failing to state a plausible claim of invalidity. *See id.; PageMelding, Inc. v. ESPN, Inc.*, 2012 WL 3877686, *3 (N.D.Cal. 2012) ("Defendant's conclusory pleading of the statutes results in a general allegation that the '577 patent is defective, nothing more. This counterclaim falls short of the 'fair notice' requirement of FRCP 8 as interpreted by *Iqbal* and *Twombly*."); *Memory Control Enterprise, LLC v. Edmunds.com, Inc.*, 2012 WL 681765, *3 (C.D.Cal. 2012) ("Merely reciting possible ways that a patent can be held invalid, stated in such a conclusory manner, with absolutely no facts supporting it, hardly provides fair notice to

Plaintiff."); *PPS Data, LLC v. Allscripts Healthcare Solutions, LLC*, 2012 WL 243346, * 4 (M.D.Fla. 2012) ("Defendant asserts no factual allegation on which this Court or Plaintiff can pin the invalidity of any claim of the patent. Further, Defendant's reference to a laundry list of statutory defenses does nothing to place the patent holder on notice of the legal basis of the invalidity challenge.")

Viber's invalidity allegations stated in Complaint ¶¶ 18 and 24 are mere boilerplate conclusions that could be stated *verbatim* in any patent case (either as a claim or counterclaim). These allegations utterly fail to apprise RTI as to the basis for the claim that these patents are invalid. This is particularly egregious given that one of the patents-in-suit has been examined by the Patent Office three times, and the other has been examined twice.

**CONCLUSION**

For the foregoing reasons, Viber's Complaint paragraph 4 should be struck pursuant to Rule 12(f) and any claims of invalidity in Viber's Complaint (including paragraphs 18 and 24) should be dismissed pursuant to Rule 12(b)(6).

Respectfully Submitted,

Dated: March 11, 2013          SPRINGUT LAW PC
New York, New York

By:_____
Milton Springut
Tal S. Benschar
75 Rockefeller Plaza, 19th Floor
New York, New York 10019
(212) 813-1600

*Counsel for Plaintiff*
*Rates Technology Inc.*