401434.1

Milton Springut
Tal S. Benschar
Springut Law P.C.
75 Rockefeller Plaza, 19th Floor
New York, New York 10019
Telephone: (212) 813-1600
Fax: (212) 813-9600

Attorneys for Rates Technology Inc.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------

VIBER MEDIA, INC.,

                Plaintiff,

      v.

RATES TECHNOLOGY INC.,

                Defendants.
-----------------------------------------------------------------

CIVIL ACTION

No. 13-0953 (DLC)

## DECLARATION OF GERALD WEINBERGER

GERALD WEINBERGER declares that:

1.    I am the president and one of the founders of defendant Rates Technology Inc. ("RTI"), and submit this declaration in support of RTI's motion to strike paragraph 4 of plaintiff Viber Media, Inc.'s complaint which alleges that RTI is a "patent troll."

### RTI Company And Its Patents

2.    RTI is an established and respected player in the telecommunications field. May 6th of this year marks thirty years that RTI has conducted business. Such business has included the design and manufacture of telecommunications and related technologies including private pay

telephones, Busy Busy reiterative dialing telephones, call cost rate chips, and least-cost-routing rate chips.  RTI has also supplied call cost databases, database lookup software and consulting services. Thus RTI is anything but a "non-practicing entity." To the contrary, RTI is actively involved in providing products and services in the telecommunications industry.

3. Nor does RTI acquire and exploit patented inventions created by others, as a number of other companies routinely do.  In the course of RTI's history, it has owned 10 U.S. patents, plus foreign counterparts, and has only enforced five of these patents.  All of these enforced patents were inventions of RTI's principals and employees, including myself.  Thus, for example, the two patents-in-suit were co-invented by myself and Roger C. Lee, then RTI's Vice-President of Engineering.

4. RTI has *only* enforced its own patents and has *never* filed a patent infringement lawsuit except for the purpose of enforcing its patents, and only when it cannot arrive at a settlement with an accused patent infringer. RTI has found success, with more than 370 telecommunications companies having licensed the patents-in-suit.  Yet over the past few years RTI has been in relatively few lawsuits which include declaratory judgment actions where RTI had no choice but to respond with compulsory patent-infringement counterclaims.  RTI has also licensed several thousand companies under three other RTI patents (now expired) also of my inventions.

### The False Allegations That RTI Is A "Patent Troll" Are Prejudicial To RTI's Business Position

5. For these reasons, the allegation that RTI is a "patent troll" is simply false. The definition of the term "patent troll" in a popular on-line encyclopedia is:

> A **patent troll** is an unkind phrase used to describe a company or
> person that owns a patent and tries to get other people to pay a lot

> of money for the right to use the patent. The patent troll usually asks for an amount of money that is less than defending a lawsuit.
>
> A patent troll is different from other patent owners for two reasons. First, the patent troll usually does not make or sell anything *[sic]* products itself. Second, a patent troll is also not usually the inventor. The patent troll instead buys the patent from other companies, and, usually, very cheap because the other company was going out of business.

*http://simple.wikipedia.org/wiki/Patent_troll.* This definition is consistent with how the term is used and understood in the industry: that the company acquires patents from others (typically in bankruptcy proceedings or companies in distress) and that it enforces patents that the company does not itself practice. Neither apply to RTI – RTI only enforces patents on its own invention, and it provides products and services apart from licensing of its patents.

6. The labeling of RTI as a "patent troll" in a public document filed with the Court is harmful to RTI's business. Such a public statement smears RTI's reputation, and makes it more difficult for it to consummate business deals with customers and licensees.

7. RTI has been diligent in responding to accusations of being a "patent troll" in the press. For example, in 2010, Business Week published an article about patent trolls which included mention of RTI, although it did not directly label RTI as a "patent troll." We complained, and subsequently a correction was issued. Attached as Weinberger Declaration Exhibit A are copies of the original Business Week article and the correction.

8. Similarly, a web article entitled "The Legal Infrastructure of Business" by Professor Randal C. Picker (a copy of which was submitted to the Court by Viber in pre-motion letters) implies that RTI is a patent troll and quotes PatentFreedom as classifying RTI as a "non-practicing entity." After our complaints, the author agreed to post the article in revised form.

9. The labeling of RTI as a "patent troll" in a public document filed with the Court is harmful to RTI's business. Such a public statement smears RTI's reputation, and makes it more

difficult for it to consummate business deals with customers and licensees. Unlike a publication, a filing with the Court can only be corrected by an order of the Court. In fact, given the official status of a court filing (as opposed to a mere publication), Viber's gratuitous pejorative statements are worse, since they appear to have the approval of the Court.

10. For these reasons, I request that the Court strike the allegations of RTI being a "patent troll" from Viber's complaint.

11. I declare that the foregoing is true and correct under penalty of perjury. 28 U.S.C. § 1746.

Dated: March 11, 2013
Smithtown, New York

_____
Gerald Weinberger