# EXHIBIT H



OSTROWKAUFMAN LLP

555 Fifth Avenue
19th Floor
New York, NY 10017
Main: (212) 682-9200
Fax: (212) 682-9222
www.ostrowkaufman.com

*Seth H. Ostrow*
*Partner*
*Tel: (212) 682-9013*
*Email: sostrow@ostrowkaufman.com*

March 19, 2013

**VIA ELECTRONIC MAIL**

Milton Springut, Esq.
Tal S. Benschar, Esq.
Springut Law P.C.
75 Rockefeller Plaza, 19th Floor
New York, NY 10019

Re: Inadequate Infringement Contentions
*Viber Media, Inc. v. Rates Technology Inc.*
Civil Action No. 13 CV 0953 (DLC) (KNF)

Dear Counsel:

We write to point out numerous insufficiencies in RTI's Infringement Contentions ("ICs") for U.S. Patent Nos. 5,425,085 ("the '085 patent") and 5,519,769 ("the '769 patent"), which you sent to us on March 6, 2013. Because your client has been definitively accusing Viber of infringement in writing for some time (see, *e.g.*, the demand letters attached as Exhibit C to Viber's Complaint), we were expecting to receive a document that would show RTI's specific theories of infringement. In the ICs, however, RTI fails to provide any valid indication as to the basis of RTI's allegations that Viber infringes its patents. As explained further below, such information is either missing or unclear, and does not comply with the Court's directive to RTI to provide Viber with proper infringement contentions by March 6th.

Accordingly, Viber hereby demands that RTI immediately cure such deficiencies – in the unlikely event it is able to do so at all – by providing supplemental infringement contentions pointing out exactly what products or services Viber provides or actions Viber performs that RTI alleges infringes the patents at issue. Short of receiving such adequate contentions, Viber will assume RTI now realizes it cannot make out a valid case of infringement and proceed accordingly.

Below are some examples of how of RTI's ICs are inadequate. Given that it is RTI's obligation to provide its infringement contentions per the Court's order, it is not Viber's duty to point out every deficiency. Accordingly, Viber reserves the right to expand upon and supplement its assessment pending receipt of supplemental contentions from RTI.

Springut Law P.C.
March 19, 2013
Page 2

## RTI's Infringement Contentions Are Inadequate

### A. RTI Cites to Irrelevant Third Party Material

RTI cites to the operability of *other* products in the marketplace that allegedly operate in a similar technology space as Viber's product and assumes that Viber's product works in a similar manner. RTI refers to such other products as being offered by Viber's "competitors," though provides no explanation as to who such entities are or how they are deemed to compete with Viber. Indeed, reliance on the operation of products and services of these so-called "competitors" is entirely improper and was an approach rejected by the Judge at the recent scheduling conference.

By way of another example, RTI explains that "an enterprise-grade VoIP solution must provide for calls to and from the public switched telephone network (PSTN)....," (ICs, p. 1), and then purports to set forth a theory of infringement based on such assumption. RTI fails to provide any support, however, that Viber's product is such an "enterprise-grade VoIP solution," that thereby provides for calls to be routed over the PSTN. Indeed, RTI will not be able to provide such support.

### B. RTI Simply Restates Claim Language

In many instances, RTI simply restates claim language and offers no indication of how Viber's product functions or meets the limitations of the claim. This amounts to nothing more than blatant conjecture on the operations of Viber's system. For example, for the limitation "comprising a housing forming an enclosure," (ICs, p. 2) RTI generalizes that "[t]he equipment and the system Viber uses for or provides to its customers include housings and enclosures." Similarly, for "connecting at a predetermined time...," (ICs, p. 6) RTI alleges that "[i]n order to update the database, the system would connect at a predetermined time and date...." Many other claim elements are treated similarly in RTI's ICs. All instances are simple conclusions with no bases or facts, and are blatantly insufficient.

### C. RTI Apparently Has Not Used Viber's Product

The ICs state that "[w]hen a Viber subscriber calls someone, Viber's interface provides a 'switch to GSM' to change a call from Viber's VoIP system to a GSM communication." (ICs p. 2). A quick use of Viber's product reveals that the 'switch to GSM' feature operates by first disconnecting the Viber call and then passing control to the phone, which uses its own means to make a call. Thus after a 'switch to GSM,' Viber's product and service are no longer being used. Similarly, RTI states that "Viber provides its users with a system and a phone 'application' that routes voice 'phone calls' to both other Viber subscribers or 'if the person you're calling doesn't have Viber, the call will be placed like *regular [sic] call,' which 'are placed through [the user's] cell phone service provider.'" (ICs, pp. 1, 5). Again, even a cursory use of Viber's product clearly shows that the "regular call" does not use Viber's product or service and is simply made by the phone's own calling means. Given its easy and free availability, RTI and its counsel are obligated to examine the actual product alleged to infringe and not simply rely on misinterpretations of public statements about the product.

Springut Law P.C.
March 19, 2013
Page 3

### D. RTI Has Not Made A Case For Infringement

Even assuming all alleged facts were true, the ICs fail to make out a case sufficient to prove infringement. The ICs do not address all the limitations of the claims, which, as every court knows, is essential in proving infringement according to the "all elements rule." For the "switch means" element of the '085 patent, RTI only states that "[t]he telephone is disconnected from the network until the call has been routed; i.e., once the least cost carrier has been determined, the call is connected to the network and completed." (ICs, p. 2). This allegation does not point to any "switch means" in Viber's system. It simply concludes that the telephone is disconnected by some unknown force.

For the "generating means" element of the '085 patent (ICs, p. 2), RTI concludes that "[t]he call setup requires current as does the completed call through the network" without pointing out anything that could be used to provide this current.

For the "transmitting over the data transfer line indicia identifying the call rating device and the date and time of the last update of the billing rate parameters" element of the '769 patent (ICs, p. 6), RTI makes a blanket statement that "billing rate parameters must be updated" and that "[t]he system would need to transmit a request," but does not address any of the limitations of this element. There is no allegation or information addressing "identifying the call rating device." There is no allegation or information addressing "identifying ... the date and time of the last update." For the "transmitting from the rate provider" element of the '769 patent (ICs, p. 7), RTI simply states that "[t]ransmissions must occur," but there is no allegation or information addressing "when the rate provider determines that an update is required."

Perhaps the most blatant example is for the "comparing means" element of the '085 patent, where RTI's only allegation actually states a negative -- that "[t]he system would not conduct comparisons for a least cost route until after it obtains the telephone number." RTI makes no indication of how, or even if, Viber would perform "comparing the cost rate of each path so as to determine a least cost route."

RTI even admits in instances that it might not have a case for infringement when it states, for example, that "verification is <u>most likely</u>" (emphasis added) for the limitation "verifying if billing rate parameters should be updated...." (ICs, p. 10).

### Viber Demands that RTI Supplement Its Infringement Contentions

As pointed out above, RTI's ICs do not address many of the limitations of the claims, cite to irrelevant third party material, and reflect that RTI has not even used -- let alone conducted even a cursory examination of -- Viber's free product, since doing so would have revealed to RTI that some of its arguments are immaterial to the patent. Also troubling is that many of the allegations simple restate claim language and give no indication how any products or actions of Viber meet the limitations of the claims. Even assuming that all alleged facts were true, the contentions do not make out a case of infringement.

Springut Law P.C.
March 19, 2013
Page 4

      In fact, RTI's current ICs clearly support Viber's assessment that RTI has no case for infringement against Viber, in addition to providing further evidence that RTI's reputation as a patent troll is indeed warranted.

      If RTI is unable or unwilling to immediately provide Viber with supplemental infringement contentions that are sufficient to show RTI's specific, valid theories of infringement, if any, then Viber reserves all rights to proceed against RTI accordingly.

Sincerely,

Seth H. Ostrow

Cc:    MSF