Jeffrey Kimmel
Jeffrey Weingart
Susan Schlesinger
Meister Seelig & Fein LLP
140 East 45th Street, 19th Floor
New York, NY 10017
(212) 655-3500

Seth H. Ostrow
Ostrow Kaufman LLP
555 Fifth Ave.
New York, NY 10017
(212) 682-9013

*Attorneys for Plaintiff Viber Media, Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VIBER MEDIA, INC., | ) |
| | ) |
| Plaintiff, | )     Civil Action No: 1:13-cv-00953 (DLC) |
| | ) |
| v. | ) |
| | ) |
| RATES TECHNOLOGY INC., | ) |
| | ) |
| Defendant. | ) |
| | ) |

**PLAINTIFF VIBER MEDIA, INC.'S OPPOSITION TO DEFENDANT'S
MOTION PURSUANT TO FED.R.CIV.P. 12(F) TO STRIKE THE "PATENT TROLL"
ALLEGATIONS IN THE AMENDED COMPLAINT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................ii

PRELIMINARY STATEMENT ..........................................................................1

ARGUMENT ......................................................................................................3

    I.    The Amended Complaint's Patent Troll Allegations
        Must Not Be Stricken..................................................................................3

        A.    The  Patent Troll Allegations Are Relevant and Material ................4

        B.    The  Patent Troll Allegations Are Accurate .....................................6

        C.    The Patent Troll Allegations Are Not Prejudicial or Scandalous ......13

CONCLUSION...................................................................................................17

## TABLE OF AUTHORITIES

**CASES**

**PAGE(S)**

*DNT, LLC v. Sprint Spectrum, LP,*
2010 WL 582164 (E.D. Va. 2010).......................................................................15

*Highmark, Inc. v. Allcare Health Management Systems, Inc.,*
706 F. Supp.2d 713 (N.D. Tex. 2010) ............................................................14, 15

*Highland Plastics, Inc. v. Sorensen Research and Development Trust,*
11-CV-02246 (SJO) (C.D. Cal. August 17, 2011)..............................................15

*Hynix Semiconductor, Inc v. Rambus Inc.,*
2008 WL 350654 (N.D. Cal. 2008) ....................................................................15

*Overstock.com, Inc. v. Furnace Brook, LLC,*
420 F. Supp.2d 1217 (D. Utah 2005)........................................................5, 14, 16

*Open LCR.com, Inc. v. Rates Technology Inc.,*
112 F.Supp.2d 1223 (D. Colo. 2000)..............................................................5, 14

*Rates Technology Inc. v. Mediatrix Telecom, Inc. et al.,*
688 F.3d 742 (Fed. Cir. 2012)........................................................................11, 12

*Rates Technology Inc. v. Mediatrix Telecom, Inc. et al.,*
2011 WL 1322520 (E.D.N.Y. 2011)....................................................................12

*Rates Technology Inc. v. Mediatrix Telecom, Inc. et al.,*
05-CV-2755 (JS) (AKT) (January 5, 2010) *aff'd*
688 F.3d 742 (Fed. Cir. 2012)..............................................................................11

*Rates Technology Inc. v. Mediatrix Telecom, Inc.,*
2008 WL 8443501 (E.D.N.Y. 2008).....................................................................12

*Rates Technology Inc. v. Speakeasy et al.,*
2011 WL 1758621 (S.D.N.Y. 2011), *aff'd*
653 F.3d 163 (2d Cir. 2012)...................................................................................3

*Rhodes Pharmacal Co., Inc. v. Dolcin Corp.,*
91 F. Supp. 87 (S.D.N.Y. 1950)..............................................................................4

*Texas Data Co., LLC v. Target Brands, Inc.,*
771 F. Supp.2d 630 (E.D. Tex. 2008)......................................................................5

## OTHER AUTHORITIES

5C Wright, Miller and Kane,
*Federal Practice and Procedure*, §1382 (3d ed. 2012) .........................................................4, 16

Plaintiff Viber Media, Inc. ("Viber") respectfully submits this Memorandum in opposition to Defendant Rates Technology Inc.'s ("RTI") Motion pursuant to Fed.R.Civ.P. 12(f) to strike the allegations in Plaintiff's Amended Complaint that RTI is widely known as a "patent troll."

## PRELIMINARY STATEMENT

By making its motion to strike the Amended Complaint's references to RTI as a "patent troll," RTI has reached yet another milestone in demonstrating that its behavior toward Viber has been entirely consistent with its well-established reputation as a patent troll.  Just weeks before, RTI served its patent infringement contentions which are so deficient that RTI is surely in violation of the Court's Order directing their production.  This is a development reminiscent of the Eastern District of New York's recent dismissal of an RTI patent case and imposition of monetary sanctions against RTI and its counsel for its failure over a period of three years to properly respond to the defendant's infringement contention interrogatories.  The dearth of any legitimate infringement claims in the contentions served on Viber – while consistent with RTI's counsel's admission in open court that RTI did not know how Viber infringed -- is particularly shocking when compared to RTI's threatening, pre-action cease and desist letters featuring bold statements such as "Your products, services, and functionalities clearly infringe the RTI Patents."  Harsh words from a company whose infringement contentions we now know are based essentially on what "competing systems" purportedly do, rather than on what Viber does.

It is a familiar pattern for RTI, and one that goes to the heart of its patent troll reputation - threaten suit, bluster about litigation costs, set unreasonable settlement deadlines, threaten suit again with more gusto, purposefully disregard non-infringement arguments, dispense with or postpone any real infringement investigation regarding the infringement target, attempt to

expand the perceived scope of the claims in the threatened patents, and dramatically hike the amount demanded in return for an RTI covenant not to sue. The strategy apparently works a lot of the time, as RTI, which admittedly does not make or sell any products or services covered by the two patents asserted against Viber, has managed to bully more than 370 "telecommunications companies" to buy its covenant not to sue. In the process of doing so, RTI has filed at least 110 patent infringement lawsuits – many more than the "relatively few," or "36" actions which RTI's President admits to in RTI's moving papers.

It is not surprising that a term used to describe an entity that engages in the aforementioned conduct has a pejorative connotation – this is exactly the point. Regardless of the reality that Viber does not infringe, RTI has attempted to exact an unwarranted toll from Viber based solely on the litigation expense bogeyman. The term "patent troll" is nothing more than a label that describes conduct in which RTI certainly has engaged, with at least one federal District Court referring to RTI's conduct as "the classic sign of a patent troll [which] was more interested in negotiating a license than enforcing its patent rights." Further, the only reason that RTI can point to that using the patent troll label in this litigation could be "harmful to RTI's business" is because its only real business is threatening to sue others and getting them to pay up. Thus, other parties who become targets of RTI's overreaching tactics may suddenly realize that they are not alone -- that they are dealing with a patent troll, who, in the words of one commentator quoted below, "was in the patent trolling business before it was cool", and that they, too, should call RTI's bluff and defend themselves accordingly. The fact that RTI has indeed earned the patent troll label and has had to badger publications to retract articles stating so goes directly to the question of whether its infringement claims against Viber have any merit at all. Judging from RTI's laughable infringement contentions, they clearly do not.

Against the foregoing backdrop, RTI has simply not provided any plausible arguments as to why the Court should strike Paragraphs 4 through 6, the first sentence of Paragraph 9, the last sentence of Paragraph 14, or Paragraph 17 of the Amended Complaint accurately alleging that RTI is known as a patent troll. Accordingly, RTI's motion should be denied, and RTI should proceed with filing its Answer to Viber's Amended Complaint.

## ARGUMENT

### I.       The Amended Complaint's Patent Troll Allegations Must Not be Stricken

But for RTI's continuing, oppressive and threatening behavior to try to force Viber, which was founded in 2010, into agreeing to an overreaching covenant not to sue[1] (despite Viber's protestations that it does not infringe RTI's patents), Viber would not have had to file this declaratory judgment action. Accordingly, the references in Viber's Amended Complaint regarding RTI's well-earned reputation as a patent troll are highly relevant, accurate and, as discussed below, not scandalous or prejudicial. Paragraphs 4 through 6, the first sentence of Paragraph 9, the last sentence of Paragraph 14, and Paragraph 17 of Viber's Amended Complaint (collectively, the "Patent Troll Allegations"), therefore, must not be stricken.

To begin with, "federal judges have made it clear, in numerous opinions they have rendered in many substantive contexts, that Rule 12(f) motions to strike ... are not favored, often being considered purely cosmetic or 'time wasters,' [and] there appears to be general judicial agreement, as reflected in the extensive case law on the subject, that they *should be denied* unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more of the parties

---

[1] Viber notes that in *Rates Technology, Inc. v. Speakeasy et al.*, 2011 WL 1758621 (S.D.N.Y. 2011), *aff'd Rates Technology Inc. v. Speakeasy et al.*, 685 F.3d 163 (2d Cir. 2012), this Court has already had occasion to consider and find unenforceable one of the overbearing clauses in RTI's standard, proposed covenant not to sue of which Viber was a recipient.

to the action". 5C Wright, Miller and Kane, *Federal Practice and Procedure*, §1382 (3d ed. 2012) (emphasis added) (internal citations omitted).  Here, the allegations RTI seeks to strike are directly connected to the filing of the instant action and the lack of merit in RTI's claims, and such allegations could not possibly cause "significant prejudice" to RTI where RTI is already widely and publicly recognized as a "patent troll."

### A.    The Patent Troll Allegations Are Relevant and Material

RTI sent letters to Viber and engaged in numerous written and verbal communications with Viber and Viber's counsel before Viber filed this declaratory judgment action.  (See Declaration of Susan Schlesinger dated April 12, 2013 ("Schlesinger Declaration"), Ex. A; Amended Complaint ¶¶ 9, 14-15, Ex. F).  The purpose of RTI's communications was to force a settlement through continual threats of unfounded litigation, coupled with the mantra that high litigation costs may well put Viber out of business.   (See Amended Complaint ¶¶ 4-7, 9, 14-15). Such actions by RTI prompted Viber to file the instant action for declaratory relief of non-infringement and invalidity regarding RTI's patents.  The Patent Troll Allegations describe part of the background and basis as to why Viber filed this action and such allegations are, therefore, pertinent and relevant. *See e.g., Rhodes Pharmacal Co., Inc. v. Dolcin Corp.,* 91 F. Supp. 87, 88-89 (S.D.N.Y. 1950) (denying motion to strike allegations in declaratory judgment complaint for non-infringement and invalidity where allegations related to "insinuations and innuendos" threatening plaintiff with patent litigation if it did not take a license).  While such behaviors as in *Rhodes Pharmacal* have come to be known as "patent troll" conduct in more recent parlance, that does not make them any less relevant to this declaratory judgment action.

In fact, RTI's conduct in threatening litigation to exact an exorbitant fee for a "license" has already garnered RTI the label of the "classic" patent troll by at least one federal District

Court. *See Overstock.com, Inc. v. Furnace Brook, LLC,* 420 F. Supp.2d 1217, 1222 (D. Utah 2005) (citing *Open LCR.com, Inc. v. Rates Technology Inc.,* 112 F.Supp.2d 1223, 1228 (D. Colo. 2000)).  Curiously, RTI has cited to *Overstock.com* for the premise that jurisdictional law does not apply differently to patent trolls and that somehow that makes the term immaterial to Viber's claims of non-infringement and invalidity.[2]  (*See* Defendant Rates Technology Inc.'s Memorandum of Law in Support of Motion to Strike Pursuant to Rule 12(f), Fed.R.Civ.P., filed April 5, 2013 ("RTI Memo"), p. 8).  Yet, the *Overstock.com* case obviously supports Viber's position where the court directly referred to conduct undertaken ***by RTI*** as "the classic sign of a patent troll", i.e., "'efforts at intimidating [plaintiff] with threats of litigation in order to convince [plaintiff] that it was in its best interest to sign a license agreement.'" *Overstock.com, Inc.,* 420 F. Supp.2d at 1222 (quoting *Open LCR.com, Inc.,* 112 F.Supp.2d at 1228).  The *Overstock.com* court quoted the decision in *OpenLCR.com,* which involved another declaratory judgment action commenced against RTI for much the same behavior that drove Viber to commence this action. The court there noted "evidence [which] indicates that RTI was more interested in negotiating a patent license agreement than enforcing its patent rights." *Open LCR.com, Inc. v. Rates Technology, Inc.,* 112 F.Supp.2d at 1228.  The *Overstock* court noted that it was this behavior ***by RTI*** that amounted to "the classic sign of a patent troll". *Overstock.com, Inc.,* 420 F. Supp.2d at 1222.  Thus, with other District Courts holding RTI up as such a "classic" patent troll example, RTI cannot very well argue that Viber's use of the term here is scandalous, irrelevant or even at all inaccurate.

---

[2] RTI also cites to *Texas Data Co., LLC v. Target Brands, Inc.,* 771 F.Supp.2d 630 (E.D. Tex. 2008) to support its assertion that the Patent Troll Allegations are not "pertinent" to issues of non-infringement and invalidity.  (See RTI Memo, p. 8).  However, it is actually *Texas Data* which is not pertinent to the instant action where it relates to questions over venue under the false patent marking statute. *See Texas Data Co., LLC v. Target Brands, Inc.,* 771 F.Supp.2d 630 (E.D. Tex. 2008).

**B.**   **The Patent Troll Allegations Are Accurate**

As RTI admits, it relies on only one definition[3] of a patent troll and asserts that under

such definition, RTI's actions would allegedly not fit because it has supposedly provided

"products and services apart from licensing of its patents." [4]  (*See* RTI Memo, p.7; Declaration of

Gerald Weinberger, President of RTI, filed April 5, 2013 ("Weinberger Declaration), ¶5 ).

However, such assertion is attenuated at best.  Notably, in RTI's own description of itself in its

"Background," the company has been in business for 30 years, and the technologies that it has

allegedly produced appear to have occurred in the past, e.g., private pay telephones, and not in

the present. (RTI Memo, p. 2).  In addition, RTI has not provided any evidence to prove such

products exist.  Nor has it even attempted to claim that it actually practices what the asserted

patents teach.  Further, in a 2005 interview with RTI's President, Gerald Weinberger, he avoided

directly responding to the question of whether RTI manufactures any products by saying, "if they

[RTI] made products, they would have the right to tell competitors to cease and desist. Besides

he says, his company does do other things besides sue for patents.  He just doesn't compete with

companies he gives coverage to."  (Schlesinger Declaration, Ex. B).  Accordingly, it would

seem that RTI is a "non practicing entity" otherwise known as a "troll" even under the definition

put forth by RTI.  (RTI Memo, p. 3).

Moreover, the term "patent troll" is recognized to have several meanings aside from the

definition relied upon by RTI,  including a company that "focuses its efforts solely on enforcing

---

[3] The definition relied on by RTI provides that "[a] patent troll is an unkind phrase used to describe a company or person that owns a patent and tries to get other people to pay a lot of money for the right to use the patent. The patent troll usually asks for an amount of money that is less than defending a lawsuit. A patent troll is different from other patent owners for two reasons. First, the patent troll usually does not make or sell anything products [sic] itself. Second, a patent troll is also not usually the inventor. The patent troll instead buys the patent from other companies, and, usually very cheap because the other company was going out of business." (RTI Memo, p. 3).
[4] Even under the definition relied upon by RTI, RTI's conduct still meets the portion of that definition of "get[ting] other people to pay a lot of money for the [alleged] right to use the patent. The patent troll usually asks for an amount of money that is less than defending a lawsuit." (RTI Memo, p. 3; Weinberger Declaration ¶5).

patent rights," and a company that "enforces patents but has no manufacturing or research base," as shown on the popular website Wikipedia, and a company that "derive[s] the majority of [its] income from enforcement of patent rights and often benefit greatly from large patent infringement judgments or settlement dollars," as described in a presentation for the Association of Corporate Counsel regarding patent trolls. (Schlesinger Declaration, Exs. C, F).

By its own admission, RTI certainly falls within these definitions of a "patent troll" and does engage in the type of behavior that Viber has alleged in its Amended Complaint, namely, whereby RTI aggressively threatens to sue to enforce its patents, and then enters into an inordinate number of settlements. RTI President Weinberger admits as much in his declaration, stating:

> RTI has *only* enforced its own patents and has *never* filed a patent infringement lawsuit except for the purpose of enforcing its patents, and only when it cannot arrive at a settlement with an accused patent infringer. RTI has found success, with more than 370 telecommunications companies having licensed the patents-in-suit…RTI has also licensed several thousand companies under three other RTI patents (now expired)…. (Weinberger Declaration, ¶ 4) (emphasis in original); (see also Amended Complaint, Ex. F; Schlesinger Declaration, Ex. A).

While RTI tries to downplay the number of lawsuits in which it has been engaged to enforce its patents, stating that "over the past few years RTI has been in relatively few lawsuits" (Weinberger Declaration ¶ 4), this is simply untrue. In fact, RTI has been involved as a plaintiff in at least 110 lawsuits.[5] (See Amended Complaint, Exs. A and B, ¶ 13; Schlesinger Declaration Exs., D and E, ¶ 13). This misstatement by RTI's President, Gerald Weinberger is, at the very least, blatantly misleading, if not perjurious. In fact, within his own declaration, Mr. Weinberger

---

[5] RTI attempts to discredit the 110 cases that Viber has cited by claiming that many are duplicative. (See RTI Memo, p. 5; Weinberger Declaration ¶ 9). However, it is clear from the PACER document that while some cases involved the same parties, each of the 110 cases was a separate action as indicated by the unique docket numbers. (See Amended Complaint, Ex. A, Schlesinger Declaration, Exhibit D). RTI also attempts to discredit the 110 cases that Viber has cited because they include infringement actions involving the enforcement of patents other than the two patents-in-suit. However, the number of infringement actions involving the enforcement of *any* of RTI's patents (not just the patents-in-suit) is relevant to demonstrate RTI's pattern of behavior.

contradicts himself by admitting that of the 110 cases cited by Viber, "36 represent suits initiated

by RTI that involved the patents-in-suit." (RTI Memo, p. 5; Weinberger Declaration ¶9).  In any

event, "36" lawsuits is clearly more than a "few."

　　Based on RTI's own overreaching aggressiveness over the years with its modest patent

portfolio in the litigation context and otherwise, it is little wonder that so that so many writers,

commentators, attorneys, courts, and others have used the term "patent troll" to describe RTI.

RTI's well-earned credential in this regard is highlighted by the excerpts of articles and legal

publications submitted with this opposition, and as Viber has accurately alleged in the Patent

Troll Allegations.  The following are some quotes from a few of those articles, copies of which

are attached as Exhibit C to Viber's Amended Complaint:

> "Jerry Weinberger was in the patent trolling business before it was cool – in fact
> before anyone had ever been called a patent troll." Joe Mullin, "Pioneering patent
> troll seeks the Supreme Court's ear – plus a cool $12 million," *Law &
> Disorder/Civilization & Discontents*, October 7, 2012;

> "Yet another patent troll is making headlines….Rates Technology, Inc…."
> "Patent Troll Bites Google," *The National Business Review,* December 30, 2005;

> "[B]ecause Rates is not making any products, commentators still refer to the
> company as a Patent Troll." Jennifer Kahaulelio Gregory, *The Troll Next Door*, 6
> J.  MARSHALL REV. INTELL. PROP. L. 292 (2007);

> "NPEs in legal parlance – more commonly referred to as 'patent trolls'…[such as]
> Rates Technology derive or plan to derive the majority of their revenues from
> patent enforcement…." Daniel P. McCurdy, "Patent Trolls Erode the Foundation
> of the U.S. Patent System," *Science Progress*, Fall-Winter 2008/2009;

> "'[P]atent trolls' are springing up and attempting to collect…Rates Technology,
> Inc., classified by PatentFreedom as [a] 'non-practicing entity'…has used its tiny
> portfolio of patents (just to have been used in litigation) to sue over 100
> companies since the 1990s." Prof. Ronald C. Picker, "Patent trolls and Silicon
> Valley's parasitic new industry," *The Legal Infrastructure of Business,* October 9,
> 2012;

> "Three licensing companies…[including] Rates Technology…filed the most
> litigation from 2003 to 2008, according to research group PatentFreedom." Rene

Ciria-Cruz, "Patently Contentious – Fighting Patent Trolls," *California Lawyer,* January 2010;

"RTI is nothing more than a shell that holds patents and pursues licensing agreements….The key issue is whether these broad patents will deter innovation if patent "trolls" can easily solicit licensing fees out of companies developing new technology." Mark Evans, "Who's Rates Technology Inc.?," *Mark Evan Tech,* December 28, 2005;

"Top Ten Most Active Trolls…Rates Technology Inc. 41 (Lawsuits 2005-Present) 35 (Defendants 2005-Present)," Gene C. Scharr and Jacob R. Loshin, *Doing Battle with "Patent Trolls" Lessons from the Litigation Front Lines,* Winston & Strawn Presentation;

"Non-practicing entities (NPEs), commonly known as 'patent trolls' [such as] Rates Technology derive or plan to derive the majority of their revenues from patent enforcement – but rather than buying patents created by others, they primarily or exclusively license patents created by their employees or owners" Jean C. Edwards, "What Are Patent Trolls and How Do They Affect Your Business?", *WMACCA Technology and IP Forum 2010,* Association of Corporate Counsel Presentation.

(See Amended Complaint, Ex. C; Schlesinger Declaration, Ex. F).

RTI contends that the articles cited by Viber are "highly misleading" because of their use of "varying definitions" of the term "patent troll," and because RTI has apparently secured a few retractions of the use of the term "patent troll" in certain publications. (RTI Memo, p. 5; Weinberger Declaration ¶8). RTI, however, misses the point – the mere fact that multiple publications have labeled RTI a patent troll (regardless of how it's defined) indicates that RTI has a reputation as a patent troll. The definition used by various publications is irrelevant. Moreover, RTI's ability to obtain retractions in a few articles does not take away from the fact that such authors and/or publishers initially found the use of such term in connection with RTI appropriate.  In addition, the aggressiveness with which RTI sought such "clarifications," through threats or otherwise, is consistent with that of an overly aggressive patent troll trying to

protect its core business model of extracting pre-litigation fees from third parties seeking only to avoid litigation costs.

Moreover, RTI's insufficient infringement contentions in this case are consistent with RTI's patent troll label.[6] RTI's Infringement Contentions fail to address all of the claim limitations of the RTI patents, rely on irrelevant third-party materials, reflect that RTI has not even used Viber's free product, and simply restate claim language and give no indication how any products or actions of Viber meet the limitations of the claims. (See Amended Complaint, Ex. G; Schlesinger Declaration, Ex. G). Based on its sanctionably deficient Infringement Contentions, which RTI has declined to remedy even after receiving written notice of their deficiencies from Viber's counsel (see Amended Complaint, Ex. H; Schlesinger Declaration, Ex. H), RTI cannot make out a case of infringement against Viber. The woeful state of RTI's Infringement Contentions is in sharp contrast to the threatening, absolute accusations contained in RTI's pre-action cease and desist letters. (See Amended Complaint, Ex. F; Schlesinger Declaration, Ex. A).[7] Examples of some of those statements are as follows:

> We have recently reviewed the Viber and its subsidiaries' services and products, and we have determined that one or more of the services and products do indeed infringe one or more claims of each of the Rates Technology Inc. U.S. Patent No. 5,425,085 and U.S. Pat. No. 5,519,769 patents. Your products, services, and functionalities clearly infringe the RTI Patents. Please accept this letter as our patent infringement notice.

(RTI letter dated March 21, 2012, Amended Complaint Ex. F; Schlesinger Declaration, Ex. A).

> Apart from the unrecoverable high cost of your patent infringement litigation defense, and your significant risk of loss greater than $30

---

[6] Pursuant to the Court's Scheduling Order, RTI served its infringement contentions on March 6, 2013 ("Infringement Contentions"). (See Amended Complaint, Ex. G; Schlesinger Declaration, Ex. G).
[7] However, the woeful state of RTI's Infringement Contentions are actually consistent with the admission by RTI's counsel in open court during the Court conference on March 1, 2013 in this case, that RTI was not then in a position – five days before the Court required submission of the Infringement Contentions – to state how Viber was infringing RTI's patents. (See Declaration of Jeffrey Weingart dated April 12, 2013, ¶¶ 2-3).

million, you summarily ignore the fact that more than 375
telecommunications companies with similar or identical functionaries
have already been covered under the RTI '095 and '769 patents.

\*   \*   \*

We will wait only a short additional period of time prior to filing our
lawsuit, and we advise you to carefully consider that once filed RTI
will proceed inexorably *only* to a final adjudication to obtain all of its
requested remedies, on the merits.

(RTI letter dated December 6, 2012, Amended Complaint Ex. F; Schlesinger Declaration, Ex.

A).

Notably, it is not the first time that RTI has been caught in its web of pre-action blusters

and unable to sustain its over-the-top infringement accusations.  In a recent series of decisions by

the United States District Court for the Eastern District of New York and affirmed by the Federal

Circuit Court of Appeals, sanctions were imposed on RTI and its lawyer in the form of a

dismissal of its patent infringement case with prejudice and an award to the defendant of its

attorneys' fees due to RTI's failure to come forth with an explanation of how, exactly, the

defendant allegedly infringed the RTI patents. *See Rates Technology Inc. v. Mediatrix Telecom,*

*Inc. et al.,*, Memorandum and Order, filed January 5, 2010, (originally filed under seal but

subsequently unsealed), 05-cv-2755 (JS) (AKT) (E.D.N.Y. 2010); *aff'd* 688 F.3d. 742 (Fed. Cir.

2012). (Schlesinger Declaration, Ex. I).

In *Mediatrix*, RTI commenced an action against the defendant Mediatrix Telecom Inc. for

alleged patent infringement of the same two patents that RTI has asserted against Viber herein.

The defendant Mediatrix served an infringement contention interrogatory to which RTI failed to

respond adequately over a period of approximately three years despite several orders from the

Magistrate Judge that it do so.  Accordingly, in a lengthy report, the Magistrate Judge

recommended that, in light of RTI's repeated and continuing failure to answer the defendant's

interrogatory seeking RTI's Infringement Contentions, the case should be dismissed with prejudice and attorneys' fees be should be awarded to the defendant Mediatrix. *See Rates Technology Inc. v. Mediatrix Telecom, Inc. et al.*, 2008 WL 8443501 (E.D.N.Y. 2008). The District Court adopted the Magistrate Judge's recommendations, dismissing the case with prejudice and awarding the defendant attorneys' fees and costs totaling roughly $90,000. *Id.; see also, Rates Technology Inc. v. Mediatrix Telecom, Inc. et. al.*, 2011 WL 1322520 (E.D.N.Y. 2011). Although RTI did not appeal the District Court's order, RTI's counsel did appeal as to the monetary sanctions imposed on him, but the Federal Circuit affirmed the decision, noting, *inter alia*, that "...the magistrate judge found that the pre-filing inquiry conducted by RTI and [its counsel] 'was not reasonable nor was it made in good faith.'" *Rates Technology Inc.*, 688 F.3d at 746.

RTI's inadequate pre-filing inquiry in *Mediatrix* as to whether or how infringement had allegedly occurred is on all fours with what has already transpired in the case. It is precisely this type of bad faith, alongside RTI's unequivocal, baseless (as shown by the Infringement Contentions) threats invoking the high cost of litigation and demanding payment according to RTI's routinized "confidential Classes tiered prices list", coupled with its promise to commence litigation in "only a short additional period of time" in the absence of such payment, which has made RTI a household name among patent troll watchers. (See Amended Complaint, Ex. F; Schlesinger Declaration, Ex. A). There is no question that such behavior – and the patent troll label routinely applied to RTI by people in the know – are directly relevant to the defense that RTI's efforts to extract unwarranted, outrageous sums from Viber are more analogous to unlawful highway robbery than they are to proper and lawful patent enforcement. Viber is entitled and intends to show at the trial of this matter that RTI's threats amount to the bullying,

money-grabbing campaign of a true patent troll, in the most pejorative sense, rather than a legitimate claim of a patent holder that has taken the time to actually investigate whether prospective infringement claims against a particular target have any valid basis. (See Amended Complaint ¶¶ 4-7, 9, 14-17).

RTI cites to the case initiated by Cequel Communications, LLC, ("Cequel") which is attached to Viber's Amended Complaint as Exhibit B, as an example of a plaintiff seeking declaratory relief "without repeated use of pejorative terms." (RTI Memo, p. 1). What RTI seems to miss, however, is that Cequel defines RTI's "principal business" in paragraph 4 of the complaint, as "threatening to sue and suing companies for alleged infringement of two patents." (Amended Complaint, Ex. B). In paragraph 12 of Cequel's complaint, the plaintiff calls RTI a "non-practicing entity," which Cequel defines as an entity which has "targeted participants in virtually all sectors of the telecommunications industry with its Patents, based on a business model that entails motivating targets to pay regardless of whether the infringe simply to avoid the cost of patent litigation." (Amended Complaint, Ex. B). Although Cequel does not use the term "patent troll," its use of "non-practicing entity" and its descriptions of RTI are just as unflattering. If anything, Cequel's description of RTI is only further evidence that RTI has the reputation of being a non-practicing entity or patent troll.

Accordingly, the Patent Troll Allegations are accurate, directly relevant to Viber's defense, and should remain intact.

**C.   The  Patent Troll Allegations Are Not Prejudicial or Scandalous**

As set forth above, the term patent troll has been readily and publicly used in connection with RTI's spurious business practices for years. (See Amended Complaint, Ex. C; Schlesinger Declaration, Ex. F).  Indeed, as discussed previously in *Overstock.com*, the court referred to RTI

as the "classic" patent troll in comparing the declaratory judgment defendant in that case to RTI. *See Overstock.com, Inc.*, 420 F.Supp.2d at 1222 (quoting *Open LCR.com, Inc.*, 112 F.Supp.2d at 1228 and finding that the patentee defendant in a declaratory judgment action "exhibited the classic sign of a patent troll –it 'was more interested in negotiating a license than enforcing its patent rights'").

It is, therefore, beyond cavil for RTI to assert that somehow the term patent troll appearing in a "public document filed with th[is] Court is harmful…and makes it difficult to consummate business deals with customers and licensees" (see RTI Memo, p. 4, 7; Weinberger Declaration, ¶ 8)[8], when the term has already been used to describe RTI in numerous publications generally and in an opinion of at least one District Court. In fact, RTI's own actions have actually drawn more attention to the term patent troll in the instant action where RTI has now engaged in motion practice (twice) over the term. Yet, this still does not change the fact that the term could not possibly be prejudicial or scandalous to RTI when RTI was already known as a patent troll years before Viber filed the instant action. (See Schlesinger Declaration, Ex. F); see also *Overstock.com, Inc.*, 420 F.Supp.2d at 1222.

Further, RTI's reliance on *Highmark, Inc. v. Allcare Health Management Systems, Inc.*, 706 F.Supp.2d 713 (N.D. Tex. 2010) for the premise that the term patent troll is pejorative, and thus, prejudicial is misleading. (See RTI Memo, p. 6). Rather, similar to the instant action and *Overstock.com*, plaintiff Highmark was forced to file a declaratory judgment action in response to continued pressure from Allcare Health Management Systems for Highmark to purchase a license to prevent patent litigation.

---

[8] As a practical matter, RTI has less than one year left on the patents-in-suit (*see* Amended Complaint ¶¶ 10, 12, Exs. D and E), and as RTI has alleged in its Memo, it has already licensed 370 telecommunications companies. (See RTI Memo, p. 2; Weinberger Declaration, ¶ 4). Thus, the prospect of RTI "consummate[ing] [further] business deals" seems speculative at best. (RTI Memo, p. 4; Weinberger Declaration, ¶ 8).

Importantly, the court in *Highmark*, as with the court in *Overstock.com*, found that the declaratory judgment defendant engaged in the type of conduct for which the term patent troll is aptly used, namely, "identify[ing] potential targets for licensing demands, accus[ing] Highmark of infringing the ... patent and ...never perform[ing] an adequate investigation of such claims[9], and along the way engaged in questionable and, at times, deceitful conduct." *Id.* at 727, fn 5.[10] Accordingly, even if pejorative, the term patent troll is not scandalous given the *Highmark* court's use of the term patent troll in its opinion as well. Likewise, in *Highland Plastics, Inc. v. Sorensen Research and Development Trust*, 11-CV-02246 (SJO) (C.D. Cal. August 17, 2011), the court denied a motion to strike the use of the term patent troll in an allegation in a complaint for declaratory judgment as to invalidity and non-infringement. The *Highland* court found that the term patent troll is a "term commonly used and understood in patent litigation and *not so pejorative as to make its use improper*."[11] *Highland Plastics*, 11-CV-02246 (emphasis added).

As with the declaratory judgment defendants in *Highmark*, *Highland Plastics* and *Overstock.com*, RTI engaged in coercive and unwarranted behavior forcing Viber to file the instant action for declaratory relief. The Patent Troll Allegations in the Amended Complaint directly relate to the basis for the action being filed. Moreover, use of the term cannot be prejudicial where RTI already has a reputation as being a patent troll and courts generally use the term patent troll where appropriate, including to refer to RTI.

---

[9] As discussed above, RTI's Infringement Contentions are severely lacking and make incorrect and unfounded assumptions as to how Viber's service works.

[10] Further, RTI's reliance on *DNT, LLC v. Sprint Spectrum, LP*, 2010 WL 582164 (E.D. Va. 2010) and *Hynix Semiconductor, Inc. v. Rambus Inc.*, 2008 WL 350654 (N.D. Cal. 2008) are inapposite. In *DNT*, at issue was a motion in limine to preclude use of the term "patent troll" at trial and defendants agreed not to use the term. Likewise, in *Hynix* at issue was a motion in limine whereby the parties stipulated to not use the term "patent troll" at trial. Notably, neither of these cases dealt with motions to strike portions of pleadings and neither case is authoritative in this District.

[11] (Schlesinger Declaration, Ex. J).

That RTI may not like being referred to as a patent troll (see RTI Memo, p. 1, 3-4) is also not sufficient for usage of the term to be considered scandalous such that it should be struck from Viber's Amended Complaint. "[T]here are several limitations on the court's willingness to strike scandalous allegations. For example, it is not enough that the matter offends the sensibilities of the objecting party or the person who is the subject of the statements in the pleading, if the challenged allegations describe acts or events that are relevant to the action." 5C Wright, Miller and Kane, *Federal Practice and Procedure*, §1382 (3d ed. 2012). Further, "[a]ny doubt about whether the challenged material is redundant, immaterial, impertinent, or scandalous should be resolved in favor of the non-moving party." *Id.*

Here, Viber's use of the term patent troll to describe RTI relates directly to its allegations concerning RTI's strategy of attempting to hold up Viber with repeated threats of litigation and attendant expenses without making any good faith effort to determine whether Viber actually infringes (it doesn't). In light of RTI's history of baseless, bald-face bullying and brinksmanship in this case, coupled with the fact that at least one court has already referred to RTI as a patent troll[12], the term patent troll cannot be considered scandalous as to RTI and therefore should not be struck from the Patent Troll Allegations.

Finally, the only alleged "harm" that RTI cites with respect to the use of the patent troll label in this litigation is it will make it "more difficult" for RTI to "consummate business deals with customers and licensees." However, this is precisely because RTI's only real business is threatening to sue others and bullying them into entering settlement and license agreements regardless of whether they infringe its patents, which business practice is what earned RTI the patent troll label in the first place. Certainly, any claimed negative impact on RTI's ability to bluff third parties into purchasing covenants not to sue without first doing any meaningful pre-

---

[12] *See Overstock.com, Inc. v. Furnace Brook, LLC,* 420 F.Supp at 1222, 1222 FN 3.

suit infringement due diligence is not a valid reason to prevent Viber from using the term patent troll to describe RTI in this litigation.

## CONCLUSION

Based upon the foregoing and on Viber's Amended Complaint, Viber respectfully requests that RTI's motion to strike be denied in all respects and that each of the Patent Troll Allegations be allowed to remain in Viber's Amended Complaint.


Dated: April 12, 2013

MEISTER SEELIG & FEIN LLP

Jeffrey Kimmel
Jeffrey Weingart
Susan Schlesinger
140 East 45th Street, 19th Floor
New York, NY 10017
(212) 655-3500
jak@msf-law.com
jpw@msf-law.com
sms@msf-law.com

OSTROW KAUFMAN LLP

Seth H. Ostrow
555 Fifth Ave.
New York, NY 10017
(212) 682-9013
sostrow@ostrowkaufman.com

Attorneys for Plaintiff
Viber Media, Inc.

5727-006 Doc. #178

-17-

Case 1:13-cv-00953-DLC   Document 30   Filed 04/12/13   Page 22 of 22

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2013, a copy of foregoing Plaintiff Viber Media, Inc.'s Opposition to Defendant's Motion Pursuant to Fed.R.Civ.P.12(f) to Strike the "Patent Troll" Allegations in the Amended Complaint, copy of Declaration of Jeffrey Weingart and copy of Declaration of Susan Schlesinger with Exhibits A-J were filed electronically using the Court's electronic filing system.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.


_____
Susan Schlesinger